UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HANOVER INSURANCE COMPANY,

        Plaintiffs,

v.

QUADRANTS, INC., WILLIAM G. CLARK, and
ANNE MARIE CLARK,

        Defendants.

Case No. 11-11246
Honorable Julian Abele Cook, Jr.

ORDER

In this civil action, the Plaintiff, The Hanover Insurance Company ("Hanover"), alleges that the Defendants, Quadrants, Inc. ("Quadrants"), William G. Clark, and Anne Marie Clark, failed to fulfill their obligations as required by an indemnity agreement. Hanover seeks (1) reimbursement for expenses allegedly incurred pursuant to its duty as surety, (2) specific performance as to the posting of collateral, and (3) an injunction. Currently before the Court is Hanover's motion for summary judgment.

I.

Quadrants, a Michigan corporation, is a general contractor who at the relevant times was engaged in multiple construction projects in Michigan and Louisiana. William Clark, the owner of Quadrants, and his wife, Anne Marie Clark, are both signatories on the indemnity agreement at issue in this case. Hanover is an insurance company that is incorporated in New Hampshire and headquartered in Massachusetts.

The construction projects in Michigan are (1) the Wal-Mart (Van Buren) Project; and (2) the

Wal-Mart (Hartland) Project. The construction projects in Louisiana are (1) the Audubon Project; (2) the Abney Project; (3) the Zachary Office Project; (4) the Zachary Auditorium Project; (5) the Choctaw Project; and (6) the Southern University Project.

According to the requirements of state law and its contracts with the project owners, Quadrants sought payment and performance bonds from Hanover on all of the above-mentioned projects. However, prior to issuing any bonds, Hanover required the Defendants to execute an indemnity agreement in its favor. Relying upon this agreement, Hanover executed a payment bond and a performance bond for each of the listed projects.

In 2010, Quadrants began experiencing difficulty in paying its subcontractors because it had not received payment from the owners of some of the construction projects; namely, the Zachary Office, Abney, and Choctaw Projects. Rather than abandon these projects, Quadrants continued to operate as the general contractor even though it had not received timely payments. Eventually, it was forced to seek outside funding in order to satisfy its financial obligations.

On November 17, 2010, William Clark sought supplementary funds from Hanover in an effort to (1) satisfy its existing payroll deficit, and (2) pay its subcontractors. Before Hanover consented to Clark's request, it required Quadrants to provide voluntary default letters for all of the bonded projects, including those projects that had been substantially completed. Although Hanover represented that it did not intend to send the letters to the owners at that time, it did reserve the right to do so.

On November 25, 2010, aware of Quadrants' difficulties, Hanover sent a letter to the City of Baton Rouge, requesting that payment for work done on the Choctaw Project be made to Hanover rather than Quadrants. Quadrants asserts that Hanover also held a meeting with various

subcontractors, whom it told would only be paid 50% of what they were owed. This declaration alienated some of the subcontractors, which, in turn, caused costs to increase as new companies were brought in to finish the work.

On February 7, 2011, William Clark emailed William Sanford of Hanover and explained that Quadrants personnel had been removed from all Louisiana projects. As a result, Hanover was required to assume control of and complete the Abney, Zachary Auditorium, and Choctaw Projects. Hanover also allegedly made payments related to the bonds on the other remaining projects.

On March 1, 2011, Hanover sent a letter to the Defendants, demanding indemnity and collateral in the amount of $2,400,000 to protect it from claims on the bonds. The Defendants refused to provide collateral and denied any monetary advances to Hanover who, in their collective opinion, had not yet incurred any losses. To date, the Defendants have declined to pay any monies to Hanover whose alleged losses have increased to $4,429,385.69. On March 28, 2011, Hanover filed this action to recover its losses from the Defendants. On June 3, 2013, Hanover filed the now-pending motion for summary judgment.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620

F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Where, as is the case here, the moving party also bears the burden of persuasion at trial, "the moving party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (internal quotation marks omitted) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

In its motion, Hanover contends that a summary judgment should be entered because (1) it has incurred losses as a result of executing the bonds, and (2) the Defendants failed to fulfill their obligations under the indemnity agreement. In its opposition papers, Quadrants maintains that (1) the indemnity agreement is not implicated in this lawsuit because it never defaulted on the projects, and (2) after assuming control of the projects, Hanover failed to act in good faith or to mitigate the damages. Anne Marie Clarke further submits that she should not be bound by the indemnity agreement because it was signed by her under duress and she received no consideration for her signature.

As an initial matter, the Defendants assert that it is premature to rule on Hanover's motion for summary judgment at this time because, in their opinion, there remains a substantial amount of discovery to be taken. Federal Rule of Civil Procedure 56(d) states that a court may defer consideration of a motion for summary judgment if the nonmovant "cannot present facts essential to justify its opposition." However, the nonmovant must initially file an affidavit or declaration that would outline the remaining discovery to be taken and how it will help oppose the motion for summary judgment. Fed. R. Civ. P. 56(d); *see also Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995) (interpreting former Fed. R. Civ. P. 56(f)); *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) (interpreting former Fed. R. Civ. P. 56(f); Fed. R.

Civ. P. 56(d) advisory committee's notes (2010 amendments)) ("Subdivision (d) carries forward without substantial changes the provisions of former subdivision (f)."). In the absence of such an affidavit, "there is no justification for [a] district court's determination that a motion for summary judgment would be premature." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Inasmuch as the Defendants have failed to file a separate affidavit that would indicate why additional discovery or time in which to conduct discovery was necessary, their contention (namely, it is premature to rule on Hanover's motion for summary judgment) is without merit. *See id.*; *Plott*, 71 F.3d at 1196. The Court will therefore proceed to consider Hanover's pending motion for summary judgment.

Hanover first contends that an entry of summary judgment is appropriate because there is no question of a material fact as to whether it has suffered losses as a result of executing the bonds. According to Hanover, Quadrants defaulted on its contracts and subcontracts, and, as a result, its subcontractors and suppliers filed claims against this entity and Hanover. The Defendants, on the other hand, maintain that Quadrants did not default on the underlying contracts. The Defendants contend that unless Hanover produces the underlying defaulted contracts, it cannot be held to have defaulted.[1]

Before addressing the merits of the parties' arguments, the Court must first determine the substantive law to apply to this dispute. Quadrants is a Michigan company with offices in Michigan and Louisiana, whereas Hanover is a New Hampshire corporation with its headquarters in Massachusetts. Notably, neither party has addressed the question of which state's law governs the interpretation of the indemnity agreement.

---

[1] The Defendants submit that Hanover has not produced any signed bonds. Significantly, the Defendants do not contend that (1) they did not sign the bonds or (2) the bonds are unenforceable because they were not signed.

A federal court sitting in diversity should apply the choice-of-law rules of the forum state. *Montgomery v. Wyeth,* 580 F.3d 455, 459 (6th Cir. 2009). With respect to issues of contract interpretation, the Michigan Supreme Court follows the Second Restatement of Conflict of Laws. *Uhi v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 528 N.W.2d 698, 703 (Mich. 1995)). For contracts of suretyship, the approach of the Second Restatement is as follows:

> The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*LaSalle Group, Inc. v. JST Props., LLC*, No. 10-14380, 2011 WL 3268099 (E.D. Mich. July 29, 2011) (quoting Restatement (Second) of Conflict of Laws § 194). In this case, there is no choice-of-law provision in the indemnity agreement. The underlying construction contracts secured by the Indemnity Agreement are presumably governed by the laws of Michigan or Louisiana. The relevant principles of contract interpretation within these two states are substantively the same.

"An indemnity contract is construed in accordance with the rules for the construction of contracts generally." *Pritts v. J. I. Case Co.*, 310 N.W.2d 261, 264 (Mich. Ct. App. 1981); *see also Dean v. Griffin Crane & Steel, Inc.*, 935 So. 2d 186, 191 (La. Ct. App. 2006). The interpretation of a contract is a question of law to be decided by the Court. *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999); *Cloud v. Nat'l Auto. Ins. Co.*, 875 So. 2d 866, 870 (La. Ct. App. 2004). Contracts should be interpreted by the courts in such a manner that it will give meaning to their terms as intended by the parties. *Title Guaranty & Surety Co. v. Roehm*, 184 N.W. 414 (Mich. 1921); *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013). The

7

Court must give full effect to the meaning of the unambiguous terms of the contract by enforcing them as written. *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003); *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007).

Under the terms of the indemnity agreement, the Defendants are required to exonerate and indemnify Hanover against all claims and liability it may incur, including losses, interest, court costs, and consultant and attorney fees as a result of executing the bonds, investigating any claim, or defending any lawsuit. Pl. Mot. Summary Judgment, Ex. A, Indemnity Agreement ¶ 2. Payment of collateral to Hanover is required "as soon as liability exists or is asserted against [Hanover]," regardless of whether Hanover has made any payment. *Id.* ¶ 3.

In the event that an owner or subcontract should make a claim against Quadrants or Hanover, Hanover is entitled to settle the claim as it deemed appropriate:

> [Hanover] shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against [it] and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment or disbursement made by [Hanover], the Indemnitors agree to immediately reimburse [Hanover] for any and all payments under [Hanover's] belief that liability for the payments existed or that payment was necessary or expedient, whether or not liability, necessity or expediency existed."

*Id.* "Vouchers or other evidence of payment by [Hanover] shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Defendants' liability to [Hanover] therefor." *Id.* The Agreement also specified the circumstances under which Hanover was entitled to take control of a project:

> In the event the Indemnitors, or any one or more of them, shall: (a) whether actually or allegedly (as declared by the obligee or owner), delay, default, abandon, forfeit or breach any contract secured by a bond, or (b) fail, neglect, or refuse in any manner to timely pay for any labor or material used in the prosecution of any contract

8

>secured by a bond, or . . . (d) fail to perform, or comply with any of the terms, covenants, or obligations of this Agreement, including, but not limited to, prompt payment of any amount due under this Agreement . . ., then the Surety, in its sole discretion, shall have the right, but not the obligation, to take possession of the work under the contract and any other contract, in connection with which the Surety has issued a bond or bond(s) and, at the expense of the Defendants, to complete, to arrange for completion, or to agree to the re-letting or completion by the obligee or owner of the contract work.

*Id.* ¶ 5.

At the time when Quadrants approached Hanover for funding, it had already failed to timely pay its subcontractors for multiple projects. This evidence alone entitled Hanover to assume control of the projects. Hanover has also produced additional evidence that Quadrants abandoned the Abney, Zachary Auditorium, and Choctaw projects, which, when viewed collectively, required Hanover to complete the projects pursuant to its obligations under the performance bonds. Hanover has also produced emails which support a finding that Quadrants abandoned all of its Louisiana projects. Finally, Hanover has produced signed voluntary letters of default for all of the remaining projects. This evidence is sufficient to find that the Defendants violated Paragraph 5 of the Indemnity Agreement.

The Defendants contend that any breach on their part must be excused because Hanover violated its duty of good faith by wrongfully interfering with Quadrants' ability to be paid. Specifically, the Defendants contend that Hanover sent the owners letters demanding that no payment be made to Quadrants at a time when this company was not in default of the construction contracts. Although Hanover did send such a letter regarding the Choctaw Project, the Indemnity Agreement permits it to take over the projects when Quadrants fails to make timely payments to its subcontractors or delays the contract. Here, at the time when the letter was sent, Quadrants was unable to pay its subcontractors and claims had been submitted against it.

Next, the Defendants contend that the expenditures incurred by Hanover were not made in good faith, and thus there is a question of a material fact as to their reasonableness. They submit that Hanover (1) grossly mismanaged the projects and (2) failed to even allege that its expenditures are reasonable.

Under the terms of the indemnity agreement, vouchers or evidence shall be conclusive evidence that the payments were necessary. Pl. Mot. Summary Judgment, Ex. A. Similar provisions have been construed to establish that vouchers or other evidence of payment constitute prima facie evidence of good faith. *Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968); *see also Great Am. Ins. Co. v. McElwee Bros, Inc.*, No. CIV.A.03 2793, 2007 WL 861152, at *4 (E.D. La. Mar. 19, 2007) (construing similar contract provision). Such provisions have been upheld as enforceable and not against public policy. *Transamerica Ins. Co.*, 401 F.2d at 362.

In support of its motion, Hanover provided affidavits from William Sanford, an employee of Hanover, and Robert Riggs, the Director of Construction Operations for Hanover's surety division. Pl. Mot. Summary Judgment, Ex. J, K. Riggs testified that upon the default of Quadrants, it investigated the projects and determined the scope of the remaining work and executed contracts to have the work completed. Accompanying Sanford's affidavit is a spreadsheet listing expenditures for each project. Sanford testified that the summary of claims, costs, and fees is accurate. Riggs testified as to the reasonableness of the expenditures incurred for the three projects that Hanover was compelled to complete. Such affidavits have been deemed sufficient prima facie evidence of good faith. *See, e.g.*, *N. Am. Specialty Ins. Co. v. Goldstein Enterprises, LLC*, No. 1:06-cv-836, 2008 WL 820351, at *5 (W.D. Mich. Mar. 25, 2008). Although the Defendants submitted an affidavit from William Clark which alleges that Hanover acted in bad faith, this document did not provide the

10

Court with any specific evidence in support of this allegation. *Cf. Safeco Ins. Co. of America v. Oakland Excavating Co.*, No. 2:08-cv-10546, 2009 WL 1658404, at *5 (E.D. Mich. June 12, 2009) (question of material fact where defendants produced attorneys' excessive expense report receipts and evidence that number of hours was unreasonable). Moreover, courts have held that negligence or a lack of diligence - i.e., mismanagement of a project - is not evidence of bad faith. *See, e.g.*, *Great Am. Ins. Co.*, 2007 WL 861152, at *5.

The Defendants also contend that Hanover failed to mitigate its damages. Courts considering such a defense have rejected it. *See, e.g.*, *American States Ins. Co. v. Glover*, 960 F.2d 149, 1992 WL 78786, slip op. at 5 (6th Cir. April 16, 1992) (unpublished); *Safeco Ins. Co.*, 2009 WL 1658404, at *5 n.1. Here, as in *American States Insurance*, the agreement between the parties is governed by the express terms of the Indemnity Agreement, which does not require Hanover to mitigate damages. Even if Hanover was required to mitigate its damages, the failure of the Defendants to post collateral - a breach of the Agreement - bars them from raising this argument. *See Fidelity & Deposit Co. of Maryland v. A-Mac Sales & Builders Co.*, No. 04-72643, 2006 WL 1555985, at *7 (E.D. Mich. June 5, 2006). Absent any specific evidence of bad faith, the Defendants are liable to Hanover for the claimed losses.

Hanover is also entitled to the payment of collateral security pursuant to Paragraph 3 of the Indemnity Agreement. "Sureties are ordinarily entitled to specific performance of collateral security issues." *N. Am. Specialty Ins. Co.*, 2008 WL 820351, at *5-6 (internal quotation marks and citations omitted). Here, the Defendants do not address the issue of specific performance, but the express terms of the Indemnity Agreement mandate the payment of collateral as soon as liability is asserted against Hanover. Thus, the entry of a summary judgment on this issue is appropriate.

Notwithstanding the ruling by this Court as to the other Defendants, Anne Marie Clark contends that she has meritorious defenses to Hanover's claims. First, in submitting this argument, Clark posits that she never requested that any bonds be issued on her behalf. Furthermore, Clark asserts that she did not receive sufficient consideration for her signature. The Indemnity Agreement applies to bonds made on behalf "of the Indemnitors or any one or more of the Indemnitors." Pl. Mot. Summary Judgment, Ex. A. Thus, under the circumstances, Clark need not have personally requested the issuance of a bond. The Indemnity Agreement also states that the Defendants affirm that they have a "substantial, material and beneficial interest" in the bonds issued on their behalf. *Id.* This affirmation establishes that Clark did receive sufficient consideration. *See Hartford Fire Ins. Co. v. P&H Cattle Co., Inc.*, 451 F. Supp. 2d 1262, 1274-75 (D. Kan. 2006); *Kochan v. Am. Fire & Casualty Co.*, 200 So. 2d 213, 215 (Fla. App. 1967).

Anne Marie Clark also contends that it would be unconscionable to permit the contract to be enforced against her. However, she does not cite any cases in which a court has held that requiring a spouse's signature is unconscionable. On the other hand, courts have noted that such a requirement is permissible. *See, e.g.*, *Great Am. Ins. Co. v. Stephens*, No. 04-3642, 2005 WL 452349, at *7 n.2 (E.D. Pa. Feb. 25, 2005). The requirement of a spouse's signature serves the purpose of including jointly-held property within the scope of the Indemnity Agreement and preventing a transfer of assets to the spouse in order to avoid the surety's indemnity claims. *See id*; *In re Manshul Constr. Corp.*, No. 96B44080, 2000 WL 1228866, at *8 (S.D.N.Y. Aug. 30, 2000).

IV.

For the reasons that have been set forth above, the Court grants Hanover's motion for the entry of a summary judgment (ECF No. 28).

IT IS SO ORDERED.

Date: March 31, 2014                              s/Julian Abele Cook, Jr.
                                                  JULIAN ABELE COOK, JR.
                                                  U.S. District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014.

                                                  s/ Kay Doaks
                                                  Case Manager